Carl A. McMahan, Esq. (CSB# 108551)
Sean P. O'Neill, Esq., (CSB# 294105)
MCMAHAN LAW PC
11755 Wilshire Blvd. Suite 1845
Los Angeles, CA 90025
Telephone: (310) 479-8827
Facsimile: (310) 479-7226

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JRN, a minor, by and through her Guardian ad Litem, ERIKA NOVOA; and ERIKA NOVOA and PABLO RAMIREZ, individually;, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs, JRN[1] by and through her guardian ad litem, Erika Novoa Ramirez, Erika Novoa and Pablo Ramirez, individually, by and through their undersigned counsel sue the Defendant, and allege the following:

1. This action arises under the Federal Tort Claims Act, Sections 2671 through 2680 of Title 28 of the United States Code. This Court is vested with jurisdiction pursuant

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2 and Central District of Los Angeles Local Rule 5.2.1, the caption has been redacted to include only the minor plaintiff's initials.

1

to Section 1346(b) of Title 28 of the United States Code.

2. Pursuant to 28 U.S.C.A. §§ 2675 et seq., any and all administrative remedies have been exhausted prior to the bringing of this action, and the Plaintiffs have fully complied with the law. Specifically, the Plaintiffs complied with 28 U.S.C.A. §§ 2675 et seq. by presenting, through certified mail, Standard Form 95 claims on January 23, 2018, under the Federal Torts Claims Act ("FTCA") 28 U.S.C.A. §§ 1346(b), 2401(b), 2671-2680. The Defendant, United States, made a final disposition of the claims; the claims were denied on May 9, 2018. A true and correct copy of the claim denial is attached hereto and labeled as Exhibit "A."

3. After Plaintiffs presented their claims, but before the claims were denied, Plaintiffs commenced an action in the Orange County Superior Court entitled, JRN, et al. v. Christopher Winkle, M.D., at al., case number 30-2017-00909864-CVU-MM-CJC. That action is ongoing as against Christopher Winkle, M.D. and Garden Grove Medical Center, and Does 1 through 100, inclusive.

4. Minor plaintiff, JRN is the daughter of plaintiff ERIKA NOVOA, who sues as guardian ad litem. Plaintiffs ERIKA NOVOA and PABLO RAMIREZ are the natural parents of minor plaintiff, JRN. The parties plaintiff reside at 7501 9th Street, Buena Park, California 90261, which is the County of Orange, within the jurisdiction of this court.

5. At all times relevant to this action, the acts and omissions mentioned herein occurred within the designation of the district, and all of the facts, acts, events and circumstances herein mentioned and described occurred in County of Orange, California.

2

6.  Defendant, United States of America, operates a health care facility known as CENTRAL CITY COMMUNITY HEALTH CENTER, which has various facilities, including AN Central Community Health Center, located at 2237 W. Ball Road, Anaheim, California, 92804-5314 ("CLINIC"). Defendant, in operating the Clinic, holds itself out to the public to use that degree of care, skill, diligence, and attention used by clinics generally in the community in the care and treatment of patients. The clinic operated by defendant employs, among others, doctors, nurses, interns, residents, student nurses, nurses' aides, and other clinic personnel over which it exercises exclusive control and supervision, with the right to employ and discharge such employees.

7.  Pursuant to 28 U.S.C.A. §§ 2671 et seq., CLINIC was a federally qualified health center and was a "federal agency" which acted as an instrumentality and/or agency of the United States. Therefore, all CLINIC employees, including CHRISTOPHER WINKLE, M.D., ("WINKLE") and ALI MOSHIN, M.D. ("MOSHIN") and YEMMAJEAN McCREADIE, N.P. (McCREADIE") were employees of the Defendant, United States, and were acting within the course and scope of their employment when providing medical care and treatment.

8.  WINKLE, MOSHIN AND MCCREADIE were health care providers, practicing medicine and nurse practioner care at the above-mentioned facility and are and were employees of defendant and acting within the scope of their offices and employment. At all relevant times, there existed between these health care providers, and plaintiffs and minor plaintiff the relationship of physician-patient and nurse practitioner-patient.

9. From January 22, 2016 through August 7, 2016, Plaintiff Erika Novoa, received prenatal and obstetrical care from WINKLE, MOSHIN, McCREADIE and others at CLINIC for her pregnancy with minor plaintiff.

10. On or about August 7, 2017, plaintiff, ERIKA NOVOA, was a patient of, and came under the care of, WINKLE, MOSHIN, MCCREADIE, and others at CLINIC in connection with prenatal, delivery and post-natal care concerning a pregnancy which delivered at Garden Grove Medical Center on August 7, 2016. These other individuals were likewise hospital staff members and employees of defendant. WINKLE was the delivering physician.

11. While under such care and treatment, the defendants, and each of them, were negligent, careless and unskillful in their management of the prenatal, labor, delivery, postnatal phase including, but not limited to, the examinations ultrasound evaluations, diagnosis, care and treatment of plaintiff, ERIKA NOVOA. That negligence was a legal cause of injuries and damages to all plaintiffs as pleaded below. The defendants' negligence includes, but is not limited to: Negligent prenatal delivery, post natal delivery, failure to offer and recommend c-section, failure to perform non-stress testing (NST) twice a week as recommended, obstetrical, nurse practioner, hospital, medical, nursing and neonatal care, failure to properly manage and control gestational diabetes, fetal macrosomia, advanced maternal age, short maternal stature including mismanagement of shoulder dystocia.

12. Defendants also negligently failed to properly advise the plaintiff of any

other possible alternative methods of diagnosis or treatment and the possible risks attendant to the diagnosis or treatment, thus failing to obtain a free and informed consent. As a legal result of the lack of free and informed consent, plaintiff suffered injuries as set forth below.

13. As a direct and legal result of the defendants' negligence, carelessness and unskillfulness, plaintiff, ERIKA NOVOA, was injured. Her injuries include, but are not limited to, non-economic damages including pain, suffering, mental, physical and emotional distress and loss of sleep and related physical damages. The plaintiff is informed and believes and therefore alleges that said injuries will result in non-economic damages in an amount according to proof. This claim is made pursuant to *Burgess v. Superior Court* (1992) 2 Cal.4th 1062.

14. As a further direct and legal result of the defendants' negligence, carelessness and unskillfulness, plaintiff, ERIKA NOVOA, has and will in the future incur economic damages in an amount according to proof.

**SECOND COUNT**

15. Plaintiff ERIKA NOVOA repeats and realleges each and all of the allegations contained in Paragraphs 1 through 15 of the First Count of this complaint with like effect as if herein fully repeated.

16. As a further direct and legal result of the defendants' negligence, carelessness and unskillfulness, plaintiff, ERIKA NOVOA, sustained serious injuries including, but not limited to, vaginal injuries, which has and will require plaintiff, ERIKA NOVOA, to

undergo surgical repair of her vaginal injuries, future medical care and treatment and related expenses all to plaintiffs noneconomic and economic damages in an amount according to proof. This is a non-*Burgess* claim.

**THIRD COUNT**

17. Plaintiff ERIKA NOVOA repeats and realleges each and all of the allegations contained in Paragraphs 1 through 17 of this complaint with like effect as if herein fully repeated.

18. JRN, a minor was born on ~~August 7, 2016~~ in Garden Grove, California. Plaintiff's mother, ERIKA NOVOA, also a plaintiff, received prenatal and obstetrical care as set forth above. Additionally, JRN, received neonatal and pediatric care on or about August 7, 2016 at GARDEN GROVE MEDICAL CENTER and at the CLINIC by physicians, nurse practioners and other employees of Defendant.

19. These health care providers, and each of them, were negligent in the care rendered to minor plaintiff's mother as aforesaid, and each defendant rendering neonatal or pediatric care was negligent in the rendition of that care on or about August 7, 2016 and afterwards.

20. As a legal result of the negligence of the defendants, and each of them, minor plaintiff, JRN, suffered permanent and irreversible brain damage, severe and permanent left brachial plexus paralysis, Horner's syndrome and other neurological injuries and emotional distress. She has undergone nerve graft surgery and has incurred and will in the future incur expenses for surgical care, medical care, nursing care, attendant care, rehabilitation,

6

physical and occupational therapy, speech therapy, educational therapy and related expenses all to plaintiffs non-economic and economic damages in an amount according to proof.

21. As a further legal result of the negligence of the defendants, and each of them, as aforesaid, minor plaintiff has lost earning capacity in an amount according to proof.

**FOURTH COUNT**

22. Plaintiff PABLO RAMIREZ repeats and realleges each and all of the allegations contained in Paragraphs 1 through 22 of this complaint with like effect as if herein fully repeated.

23. At all relevant times, plaintiff, PABLO RAMIREZ, was contemporaneously aware of and witnessed that the labor and delivery of his daughter, JRN. He was contemporaneously aware of and witnessed WINKLE forcibly pull, twist and push on JRN's head and neck during the delivery, which caused significant injuries to the minor plaintiff. Plaintiff PABLO RAMIREZ was horrified by the conduct of WINKLE. He was terrified for the safety of his baby since the manner in which he witnessed WINKLE pulling, twisting, turning and pushing on his baby's head during the delivery caused plaintiff, PABLO RAMIREZ, to believe at that time and after that WINKLE was doing something wrong which was causing serious injuries to the minor plaintiff, JRN. Plaintiff, PABLO RAMIREZ, was contemporaneously aware of and witnessed the minor plaintiff JRN head come out of the birth canal while the rest of her body was stuck during the vaginal delivery. Plaintiff, PABLO RAMIREZ, was contemporaneously aware of and witnessed that the

minor Plaintiff JRN'S head was purple (which means the baby was deprived of oxygen) as the rest of the baby's body was stuck in the vaginal cavity.

24. As a direct, legal and proximate result of the defendants' negligence and the negligence of defendants' agents, employees and representatives during the labor and delivery of plaintiffs' daughter, JRN, which resulted in her said injuries, plaintiff, PABLO RAMIREZ, suffered severe emotional distress all to his economic and non-economic damages according to proof. This claim is made pursuant to *Thing v. La Chusa* (1989) 48 Cal.3d 644.

WHEREFORE, plaintiffs request judgment against defendant as follows:

1. Damages in an amount according to proof;

2. Plaintiffs' costs in this action; and

Such other and further relief as the court may deem just and proper.

Dated: October 3, 2018                **MCMAHAN LAW PC**

By: */s/ Carl A. McMahan*
CARL A. MCMAHAN, ESQ.
SEAN P. O'NEILL, ESQ.
Attorneys for Plaintiffs